McCORD, Judge.
This is an appeal from a summary final judgment ruling that appellants are not entitled to the partial sales and use tax exemption as provided in Section 212.08(9), Florida Statutes, F.S.A., for certain vehicles (aircraft) engaged in interstate and foreign commerce.
Appellant, Robert Graf, Inc., operates as an “air taxi-commercial operator” under an operating certificate issued by the Federal Aviation Agency. The certificate recites that it has met the requirements of the Federal Aviation Act of 1958, as amended, and the rules, regulations and standards prescribed thereunder for the issuance of the certificate. The operating specifications issued to it by the Federal Aviation Agency authorize it to conduct air-taxi operations as an air carrier engaged in air transportation or commercial operation, as a commercial operator, utilizing aircraft of a certain weight in passenger and cargo operations. It engages in such commercial operations in interstate and foreign commerce.
Section 212.08(9), Florida Statutes, F.S. A., provides in pertinent part as follows:
“Vehicles and parts thereof used to transport persons or property in interstate or foreign commerce are subject to tax imposed in this chapter only to the extent provided herein. The basis of the tax shall be the ratio of intrastate mileage to interstate or foreign mileage traveled by the carrier during the previous fiscal year of the carrier, such ratio to be determined at the close of the carrier’s fiscal year. This ratio shall be applied each month to the total purchases by the carriers of vehicles and parts thereof which are used in Florida to establish that portion of the total used and consumed in intrastate movement and subject to tax under this chapter.”
This statute was enacted by the legislature in 1963 (Chapter 63-526 Laws of Florida). Prior thereto, the statute exempted from the tax vehicles and parts thereof used to transport passengers or property in interstate or foreign commerce. Section 212.-08(3), Florida Statutes 1955, Section 212.-08(7), Florida Statutes 1957, 1959, 1961. (F.S. 1957 took out the foreign commerce exemption but F.S.1959 put it back in.)
The Supreme Court in L. B. Smith Aircraft Corp. v. Green, Fla., 94 So.2d 832, construed the aforesaid exemption as it existed prior to the 1963 enactment. There the court had the question before it of whether or not the exemption (which made no mention of carriers) applied to aircraft parts sold and installed into aircraft owned by companies which used them in their businesses to transport their executives and employees across state lines and in foreign commerce. The Supreme Court said:
“We cannot say with certainty what the Legislature intended to exempt by using the language: parts of vehicles ‘used to transport passengers or property in interstate and foreign commerce.’ The broadest interpretation would include parts installed on any vehicle which at some time carried humans or property across a state line or to a foreign country. We think, however, when the entire statute is read and its basic purpose is considered, such a broad interpretation was not intended. It was the manifest purpose in enacting this law to tax as completely within its sphere as organic provisions would allow, e. g. Section 212.21(3). A common understanding of the language ‘passengers or property in interstate and foreign commerce’ would lead to the conclusion that it was used in *601 its narrower sense and relates only to what is more generally referred to as common carriers.”
Later, this court had occasion to consider the same statutory wording of the exemption in two 1963 opinions. The first was Ruke Transport Line, Inc. v. Green, Fla.App., 156 So.2d 176. There, the transport. line seeking to bring itself within the exemption was a carrier oyer regular and irregular routes in interstate commerce of commodities exempt from regulation by the Interstate Commerce Commission. Referring to the Supreme Court’s opinion in L. B. Smith, supra, holding the exemption only to apply to vehicles which are “more generally referred to as common carriers,” this court went on to discuss the term “common carrier” and stated:
“The Legislature of Florida has failed to adopt a statutory definition of the term ‘common carrier.’ We must therefore determine what is a ‘common carrier’ as that term is referred to in the Supreme Court’s decision of Smith Aircraft, supra. A common carrier has been generally defined as ‘one who holds himself out to the public as engaged in the business of transporting persons or property from place to place, for compensation, offering his services to the public generally. * * * The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently and hence he is regarded, in some respects, as a public servant. The dominant controlling factor in determining the status of one as a common carrier is his public profession or holding out, by words or by course of conduct, as to the service offered or performed. * * * To constitute a public conveyance a common carrier, it is not necessary that it come within the definition of a public utility so as to be subjected to the rules and regulations of a public utility commission.’ 9 Am.Jur., Carrier, Section 4, pp. 430-432.
One of the distinctive characteristics of a common carrier is that it undertakes to carry for all persons indifferently, within the limits of its capacity and the sphere of the business required of it, so that it is bound to serve all who apply and is liable for refusal, without sufficient reason, to do so.
In the Orlando Transit Co. case, Orlando Transit Co. v. Florida Railroad and Public Utilities Commission (1948), 160 Fla. 795, 37 So.2d 231, 237, the Supreme Court of Florida held:
‘The law makes it the duty of a common carrier, within the limits of its ability, to receive and carry all persons applying for transportation. The law makes it optional with a “for hire service” to carry those of the general public applying to it for passage. 37 Am.Jur. 526. A “for hire service” has no continuous or recurring carriage under contract unless made so by the consent of the parties.’
In his testimony before the hearing examiner the president of petitioner corporation admitted that his company is not required to carry commodities for all persons who may request transportation, although it holds itself out as available for that type of service. Petitioner is free to contract with whomever it pleases, is under no obligation to carry for all persons indifferently or to serve all who apply, and cannot be made liable for such refusal. Petitioner therefore appears to lack one of the essential characteristics of what is generally referred to as a ‘common carrier.’ ”
The second case above referred to in which this court further construed the same statute was Elbert Moore, Inc., v. Green, Fla.App., 156 So.2d 397. There the party seeking to come within the exemption leased trucks to Lykes Bros,, Inc. The leased trucks were used in transporting property of Lykes from middle and western states to Florida. After transporting its own goods to Florida, Lykes transported goods for others for an agreed con *602 sideration on their return trips to the middle and western states. There this court said:
“It is agreed that neither appellant nor its lessee, Lykes Bros., Inc., is a common carrier of persons or property, nor are the trucks in question used as a part of any system of common carriage. For a more comprehensive interpretation of the term ‘common carrier’ as mentioned in the L. B. Smith Aircraft case, reference is made to the recent decision of this court in the Ruke Transport Line, Inc., case. On the basis of the decision in Smith, supra, we must conclude that appellant does not qualify for an exemption from the sales tax on the rentals received by it under its leases with Lykes.”
In 1963 the legislature amended the law. Repealing the complete exemption for interstate and foreign commerce, it enacted the partial exemption as previously quoted —Section 212.08(9), Florida Statutes, 1971, F.S.A. Subsequently, this court in Florida Growers Coop. Transport v. Department of Revenue, Fla.App., 273 So.2d 142 (Certio-rari denied by the Supreme Court, Fla., 279 So.2d 33) departed from the previous common carrier interpretation of the previous statute without specifically referring to common carriers in the opinion. It held Florida Growers Coop. Transport was entitled to the exemption stating:
“The sole question presented for our determination in this appeal is whether rental charges for motor vehicles used to transport property in interstate commerce is exempt from sales taxes when paid by a carrier which is exempt from certification by the Interstate Commerce Commission pursuant to Sec. 303(b)(5) of the Interstate Commerce Act.”
Florida Growers Coop. Transport was not a common carrier but was a cooperative association formed for the purpose of op,-erating a trucking company to provide transportation service for its members and the general public. It had no certificate or permit issued by the Interstate Commerce Commission, but none was required for its operations under the Interstate Commerce Act. The decision in the Florida Growers Coop. Transport case is based upon a stipulation of the parties as to the facts. The stipulation, which is a part of the record filed in this court in that case (and of which we take judicial notice), reveals that an exempt carrier under the Interstate Commerce Act by virtue of the agricultural cooperative exemption of Section 303(b)(5) (49 U.S.C.) is limited as to the identity of persons for whom transportation service may be performed. Eighty-five percent of its total tonnage must be handled for only members of the cooperative and less than 15% of the total tonnage transported (other than exempt commodities) can be handled for non-members. The parties stipulated that Florida Growers Coop. Transport, under the exemption, was restricted as aforesaid in the extent of business which could be handled for shippers who were not members of the coop and that it did not have the duty nor obligation to provide transportation service for the general public as a carrier holding a certificate of authority would have. The coop was, therefore, clearly not a common carrier.
In the Florida Growers Coop. Transport case, the Department of Revenue had adopted certain rules attempting to interpret or implement the above quoted Section 212.08(9), among which was the following (as quoted in the opinion) :
“Trucking Companies engaged in transporting fruits, vegetables, seafood or livestock from Florida to other states are not entitled to proration purchases of parts for motor vehicles used exclusively in interstate commerce unless they are licensed as common carriers. . . . ”
This court thereafter said:
“It will be seen, then, that in subdivision (9) of this rule a condition is added that the Legislature did not put in the state —namely, that the mentioned trucking companies are not entitled to ‘proration *603 purchases of parts for motor vehicles used exclusively in interstate commerce unless they are licensed as common carriers.’
The appellant’s main argument in this appeal is that there ‘is no sound basis for such restrictions or limitations’ and the rule attempting to impose the same is unlawful.’
As noted in subdivision (1) of the said rule, the purpose of the exemption is to exclude from the sales tax those transactions which are not within the taxing powers of the state, viz: transactions involving interstate and foreign commerce. The tax imposed against the plaintiff is directly opposed to the stated purpose.”
The statute was held to prevail over the rule, and the carrier was held to be entitled to the exemption.
It should be noted that the legislature in the 1963 enactment construed in Florida Growers Coop. Transport, did not adopt the Supreme Court’s construction of the previous statute. As stated above, the Supreme Court had construed the exemption to apply only to common carriers, but in enacting the new statute, the legislature used only the word “carrier” without using the qualifying and limiting word “common.” In this new statute, the legislature, rather than carrying forward the court’s term “common carrier”, dropped the word “common” and used only the word “carrier.” We interpret this latter statute which changed the law but did not adopt the court’s limiting phrase “common carrier” to mean the legislature intended the exemption to apply to vehicles of carriers, regardless of whether or not they are common carriers.
It is our ruling that appellant, Robert Graf, Inc., is entitled to the partial exemption provided in Section 212.08(9), Florida Statutes, F.S.A. The record at this point, however, does not contain sufficient evidence on which a determination can be made as to whether or not appellant, Jet Charter, Inc., is a carrier.
Reversed and remanded with directions to vacate the summary final judgment granted on respondent’s motion and to proceed with the cause in the light of the rulings of this opinion.
SPECTOR, Acting C. J., and BOYER, J., concur.