500 So.2d 212 (1986)
TRI-STATE SYSTEMS, INC., Appellant,
v.
DEPARTMENT OF TRANSPORTATION, Appellee.
No. BJ-427.
District Court of Appeal of Florida, First District.
October 15, 1986.
*213 Gerald S. Livingston, Orlando, for appellant.
Franz Eric Dorn, Tallahassee, for appellee.
*214 ZEHMER, Judge.
Tri-State Systems, Inc. (Tri-State), appeals a final order of the Department of Transportation (DOT) revoking the permits covering several outdoor advertising signs. The revocation was based on false and misleading statements in applications filed by Henderson Signs, who originally obtained the permits and later transferred them to Tri-State. We reverse and remand for further proceedings.
In June 1979 Henderson Signs filed applications for permits to erect seven outdoor advertising signs adjacent to I-10 in Washington County. The applications stated that the sites were located in areas zoned commercial or industrial. DOT issued the permits and signs were erected on the leased sites. Henderson's interests in these signs were later purchased by Tri-State and the permits transferred to Tri-State. Tri-State contends that prior to the acquisition its representatives inquired of DOT's district office about the validity of the sign permits and received assurance from DOT personnel that the permits were legally issued. Tri-State contends that it acted in reliance on these representations by DOT's personnel in paying Henderson for the signs and permits and thereafter executed new land leases for periods of five to ten years covering the sites of the seven permitted signs.
In October 1984 DOT reviewed the sites and zoning ordinances, and sent notices of violation to Tri-State advising that the permits were going to be revoked pursuant to section 479.08, Florida Statutes (1983), because the locations had not been zoned commercial or industrial as stated in Henderson's original applications. Tri-State requested and was granted an administrative hearing under section 120.57(1), Florida Statutes (1983). After receiving testimony and documentary evidence, the hearing officer concluded that, regardless of the fact that the initial applications had been approved by DOT and permits issued, the statutory requirements were not satisfied when such applications were submitted because the sites were in unzoned areas, rather than areas zoned commercial or industrial as represented in the applications. Accordingly, the hearing officer concluded that the applications submitted by Henderson contained "false or misleading statements" and recommended that the permits be revoked pursuant to section 479.08. The recommended order was approved and adopted by DOT as its final order revoking the permits.
Tri-State makes two points on appeal. First, it argues that the hearing officer erred in rejecting the testimony of Tri-State's two representatives concerning statements by DOT personnel that the permits were validly issued and that the agency's final order is unsupported by competent, substantial evidence. Second, it contends that DOT is estopped from revoking the permits because Tri-State was induced to act by the representations of validity by DOT personnel.
The hearing officer ruled that the testimony of Tri-State's witnesses was "self-serving and uncorroborated, and thus ... not of sufficient quality to support a finding of fact" (R.180). We construe this statement as a ruling that the testimony was incompetent to prove either the truth of such statements or the fact that the statements were made by DOT personnel. This construction is supported by the hearing officer's explicit conclusion that the first essential element of estoppel  "a representation by the party to be charged of a material fact that is contrary to a later-asserted position"  has not been proven because "the facts do not support a finding that the Department made such a representation, thus foreclosing the applicability of the doctrine of estoppel" (R.183). For reasons we now discuss, these rulings were erroneous and necessitate remand for further proceedings.
The testimony of Tri-State's representatives was obviously competent and admissible to prove that DOT's personnel had made the statements attributed to them and that these statements induced Tri-State to act as it did in acquiring the signs from Henderson, both under the verbal act doctrine and as a face-to-face conversation with a party's agent. See Zeigler v. State, 402 So.2d 365, 373-74 (Fla. 1981), cert. denied, *215 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); Pauline v. Lee, 147 So.2d 359 (Fla. 2d DCA 1962), cert. denied 156 So.2d 389 (Fla. 1963); 23 Fla.Jur.2d, Evidence and Witnesses, § 233 (1980). The hearing officer erred in rejecting such testimony on the ground that it was not competent proof that the utterance was made by DOT agents. Moreover, even though the testimony may be said to constitute hearsay evidence that the permits were in fact legal, DOT made no objection to the testimony on this or any other ground at the time it was presented. Thus, as unobjected-to hearsay the testimony became part of the evidence in the case and was usable as proof just as any other evidence, limited only by its rational persuasive power. McCormick, Evidence, § 54 (3d ed. 1984); 29 Am.Jur.2d, Evidence § 494 (1967); 30 Am.Jur.2d, Evidence, § 1103 (1969).
The hearing officer likewise erred in rejecting the testimony because it came from Tri-State employees and was not corroborated by the DOT personnel involved. Testimony by an interested party, even though self-serving, is legally competent to establish a fact if the fact finder is persuaded as to its truthfulness. Reynolds v. Towne Management of Florida, Inc., 426 So.2d 1011 (Fla. 2d DCA 1983); 23 Fla. Jur.2d, Evidence and Witnesses, § 360 (1980). Moreover, the failure of a party to present the testimony of a person within his control who has knowledge of the fact at issue justifies an inference adverse to that party. See Southern Cross Steamship Co. v. Firipis, 285 F.2d 651, 659 (4th Cir.1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961); 29 Am.Jur.2d, Evidence, § 180 (1967).[1] In this case, DOT actually called as witnesses the DOT personnel said to have made the statements to Tri-State, i.e., its outdoor administrator and district officer, but DOT never interrogated them about whether the claimed assurances to Tri-State's representatives had in fact not been given. Since these critical witnesses testified for DOT and, although available to rebut Tri-State's testimony, did not deny or otherwise controvert the statements attributable to them, the uncontradicted testimony of Tri-State's representatives should have been accepted as credible evidence absent some other basis in the record for rejecting it. See Bergh v. Bergh, 160 So.2d 145, 146 (Fla. 1st DCA 1964); 23 Fla.Jur.2d, Evidence and Witnesses, § 359 (1980). The hearing officer's recommended order, as approved by DOT, applied incorrect principles of law in rejecting this testimony on the grounds stated.
The record does not, therefore, contain competent, substantial evidence to support a finding that Tri-State was never told by DOT personnel that the sign permits were legal when Tri-State was investigating whether to purchase Henderson Signs' interest. Proof of these representations was presented by Tri-State and was material to its contention that, regardless of whether the permits had been invalidly issued to Henderson Signs, DOT became estopped by the conduct of its personnel to revoke the permits then held by Tri-State. Since neither the hearing officer nor DOT made findings of fact material to the remaining elements of the estoppel defense, it is necessary to remand for further proceedings and rulings by the hearing officer and agency regarding the sufficiency of the evidence to support the estoppel defense. § 120.68, Fla. Stat. (1985); Stuckey's of Eastman, Georgia v. Department of Transportation, 340 So.2d 119 (Fla. 1st DCA 1976).
We do not agree with DOT that estoppel is not, as a matter of law, an available defense on the record before us. The doctrine of equitable estoppel may be effectively applied against the state, although only in exceptional circumstances, upon a showing of the following elements: (1) A representation as to a material fact that is contrary to a later-asserted position; *216 (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. E.g., State Dept. of Revenue v. Anderson, 403 So.2d 397, 400 (Fla. 1981); Fraga v. Department of Health and Rehabilitative Services, 464 So.2d 144 (Fla. 3d DCA 1985); Kuge v. State, Dept. of Admin., 449 So.2d 389, 391 (Fla. 3d DCA 1984). Any decision on whether estoppel should be applied in this case will depend upon properly made findings of fact as to each element in accordance with applicable legal principles. Stuckey's of Eastman, Georgia v. Department of Transportation, 340 So.2d 119.
DOT argues that the estoppel issue is controlled by Dade County v. Bengis Associates, 257 So.2d 291 (Fla. 3d DCA), cert. denied, 261 So.2d 839 (Fla. 1972), and that this case requires affirmance as a matter of law. We find that case distinguishable, however, in that the court of appeal ruled that the permit had been issued to Bengis for a sign larger than that allowed by law as the result of a mutual mistake of fact. The estoppel claimed in this case is not based on a mutual mistake of fact made by DOT and Tri-State with respect to the original application, but rather upon the latter's reliance on DOT's representations that the permits issued to Henderson Signs were valid and legal at the time Tri-State sought to acquire them.
DOT also contends that estoppel cannot apply to transactions forbidden by statute or contrary to public policy or which arise from conduct resulting from a mistake of law, citing Godson v. Town of Surfside, 150 Fla. 614, 8 So.2d 497 (1942); Salz v. Department of Administration, 432 So.2d 1376 (Fla. 3d DCA 1983); City of Miami Beach v. Meiselman, 216 So.2d 774 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 533 (Fla. 1969). Each of these cases is factually distinguishable, and we do not place the facts of the present case into any of the cited categories. No statute or rule has been cited to us prohibiting DOT's personnel from responding to Tri-State's inquiries, nor do we believe that it is against public policy for DOT to respond to such inquiries. The record does not show that the statements by DOT personnel were based on a mistake of law. Whether or not the sites were zoned or unzoned, and whether the applications contained any false statements involved questions of fact, not law. Although DOT personnel in the Chipley office were not necessarily obliged to respond to the inquiries from Tri-State's representatives, the fact is that they did do so, and thereby became obligated to respond with reasonable care. It is a well-established principle that an action undertaken, even gratuitously, must be performed with reasonable care. Department of Highway Safety and Motor Vehicles v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986). This duty required DOT personnel to determine that no grounds for invalidating the permits existed or to respond that they were unable to make any representation as to the validity of the permits. Misrepresentations of fact in the performance of this assumed duty may serve as a basis for holding DOT estopped to thereafter assert against Tri-State that the permits acquired by it in reliance on such statements are in fact invalid. Lacking finding of facts supported by the record on these issues, we are not able to pass on the legal sufficiency of the estoppel defense until further findings of fact have been made by the hearing officer and agency below.
Finally, we do not agree with DOT's argument that an application shown to contain false and misleading statements, per se, renders the permit issued thereon void ab initio. Such permit is only voidable because it necessarily remains valid and effective until lawfully revoked upon a proper showing by DOT under section 479.08. Section 479.08 explicitly requires that the challenged application contain "knowingly false or misleading information." We construe the inclusion of the word "knowingly in the statute as an expression of legislative intent to exclude from its ambit any application that inadvertently, mistakenly, or negligently contains a false or misleading statement. The order under review does not contain any finding that the applications *217 in dispute contained knowingly false or misleading information. The failure to make a finding that the alleged false statements were knowingly made likewise requires that we vacate the order and remand for further proceedings.[2]
REVERSED AND REMANDED.
BOOTH, C.J., concurs.
JOANOS, J., dissents with written opinion.
JOANOS, Judge, dissenting.
I dissent from the majority opinion.
The trier of fact, the hearing officer in this case, has the right to reject evidence if he finds it unbelievable and lacking in credence. See Hill v. Parks, 373 So.2d 376 (Fla. 2d D.C.A. 1979). I do not construe the hearing officer's ruling that the testimony of Tri-State's witnesses was "self-serving and uncorroborated, and thus ... not of sufficient quality to support a finding of fact" as being a determination that the evidence was inadequate as a matter of law. Rather, I view it as a determination that as a finder of fact the hearing officer was not persuaded by the evidence of the facts sought to be proven.
Nevertheless, even if it were error to reject that testimony, the final order should be affirmed. Section 479.08, Florida Statutes 1985, authorizes the Florida Department of Transportation to revoke a sign permit "when the application for the permit contains knowingly false or misleading information." The hearing officer found as a conclusion of law that the signs were located in unzoned areas and not in areas zoned commercial or industrial, as represented in the applications. This false information constitutes statutory grounds for revoking the permits. Bill Salter Outdoor Advertising, Inc. v. DOT, 492 So.2d 408 (Fla. 1st D.C.A. 1986).
Further, I do not regard this case as one in which the doctrine of equitable estoppel can or should be invoked against the state. Only in rare situations can that doctrine be applied against the state. Bryant v. Peppe, 238 So.2d 836, 838 (Fla. 1970). "It is only when the plea is supported by special and exceptional circumstances that it will be sustained against the state." Id. This is simply not a special or exceptional situation in order to warrant the application of the doctrine and thereby thwart the statutory law of the state. There was no duty on the part of the DOT employees to check out the legality of the sign applications for appellant. Appellant had no reason to expect that information received in a discussion with DOT employees could alter the law of the state.
NOTES
[1] Of course this general rule does not necessarily apply where the party presents the testimony of at least one witness to establish the facts and does not present the testimony of other knowledgeable witnesses under its control which would merely be cumulative or corroborative. Weeks v. Atlantic Coast Line R.R., 132 So.2d 315 (Fla. 1st DCA 1961).
[2] Bill Salter Outdoor Advertising, Inc. v. DOT, 492 So.2d 408 (Fla. 1st DCA 1986), does not require a contrary result because the decision is materially distinguishable. Apart from the fact that the case involved revocation of a permit held by the original applicant on grounds that the application falsely represented that the sign was located within 800 feet of unzoned commercial activity when in fact there was no commercial activity at all at the locations described, the court's decision concluded that "the applications contained knowingly false or misleading information." That decision cannot, therefore, be taken as approving revocation absent the showing of the knowingly false or misleading character of the statements as required by the statute.